UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DELORES JEFFREY,

    Plaintiff,

v.                                            CASE NO. 3:16-cv-1597-J-MCR

ACTING COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION,

    Defendant.
_____/

## MEMORANDUM OPINION AND ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying her application for a period of disability and disability insurance benefits ("DIB"). Plaintiff alleges she became disabled on February 25, 2012. (Tr. 313.) A hearing was held before the assigned Administrative Law Judge ("ALJ") on March 10, 2014, at which Plaintiff was represented by an attorney. (Tr. 70-117.) The ALJ found Plaintiff not disabled from February 25, 2012 through April 3, 2014, the date of the decision. (Tr. 142-54.) On September 18, 2015, the Appeals Council vacated the ALJ's April 3, 2014 decision and remanded the case to the ALJ for further proceedings.[2] (Tr. 161-62.) In accordance with the remand

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Docs. 8, 10.)

[2] On remand, the ALJ was directed to give further consideration to whether Plaintiff has a severe mental impairment and to her maximum residual functional capacity ("RFC"), and to obtain supplemental evidence from a Vocational expert ("VE")
(continued...)

order, the ALJ held a second hearing on January 14, 2016. (Tr. 32-69.) On January 29, 2016, the ALJ issued a second decision finding Plaintiff not disabled from February 25, 2012 through December 31, 2015, the date last insured.[3] (Tr. 14-25.)

Plaintiff is appealing the Commissioner's decision that she was not disabled from February 25, 2012 through December 31, 2015. Plaintiff has exhausted her available administrative remedies and the case is properly before the Court. The Court has reviewed the record, the briefs, and the applicable law. For the reasons stated herein, the Commissioner's decision is **REVERSED and REMANDED**.

I. **Standard**

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir.

---

[2](...continued)
to clarify the effect of the assessed limitations on her occupational base. (Tr. 161-62.)

[3] Plaintiff had to establish disability on or before December 31, 2015, her date last insured, in order to be entitled to a period of disability and DIB. (Tr. 14.)

2004).  Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

When a claimant seeks to establish disability through her own testimony of pain or other subjective symptoms, the Eleventh Circuit's three-part "pain standard" applies.  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (per curiam).  "If the ALJ decides not to credit such testimony, he must articulate explicit and adequate reasons for doing so." *Id*.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Id*.

Once a claimant establishes that her "pain is disabling through objective medical evidence that an underlying medical condition exists that could

reasonably be expected to produce the pain," pursuant to 20 C.F.R. § 404.1529, "all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability." *Foote*, 67 F.3d at 1561; *see also* SSR 96-7p (stating that after the ALJ finds a medically determinable impairment exists, the ALJ must analyze "the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities").

When a claimant's "statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." SSR 96-7p.

> When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements. . . . The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms.[4] The

---

[4] These factors include: (1) a claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate the claimant's pain or other symptoms; (5) any treatment,

(continued...)

determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

*Id.*

"[C]redibility determinations are the province of the ALJ," *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005), and "[a] clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court," *Foote*, 67 F.3d at 1562.

## II. Discussion

Plaintiff argues that the ALJ's reasons for rejecting her testimony about her severe migraine headaches and neck pain are not supported by substantial evidence. Plaintiff explains:

> The ALJ brushed [Plaintiff's] headaches aside with a conclusory statement that they were not disabling, but the treatment record shows that she has up to five headaches per week and that they are not effectively controlled with treatment. While she is able to use medications, those medications cause significant drowsiness and force her to lie down during the day. The record as a whole shows that [Plaintiff's] symptoms would prevent her from completing a normal work day and work week.

(Doc. 12 at 18.) Defendant responds that the ALJ complied with the regulations

---

[4](...continued)
other than medication, received by the claimant to relieve the pain or other symptoms; (6) any measures used to relieve the pain or other symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3); SSR 96-7p.

for evaluating pain and other symptoms and provided sufficient reasons to support his credibility finding. (Doc. 13 at 4-5.)

The ALJ found that Plaintiff's severe impairments included cervical degenerative disc disease, migraines, and type II diabetes mellitus. (Tr. 16.) The ALJ further found that Plaintiff was capable of performing light work with the following limitations:

> [T]he claimant can only occasionally climb, balance, stoop (bend), kneel, crouch, crawl, push and pull. The claimant requires the ability to alternate between sitting and standing every 30 minutes. The claimant must avoid concentrated exposure to respiratory irritants such as dust, fumes, and gases, moving mechanical parts, and unprotected heights. The claimant is limited to performing simple [] tasks with little variation that take a short period of time to learn (up to and including 30 days).

(Tr. 18.)

The ALJ addressed Plaintiff's migraines and pain as follows:

> The claimant alleged that she is unable to work due to migraine headaches and a bad back (Exhibit 2E). Due to these alleged conditions, the claimant reported that she experiences symptoms such as headaches, fatigue, radiating neck pain, and sensitivity to light. Because of these reported symptoms, the claimant stated that she has difficulty operating a motor vehicle long distances, prolonged sitting, prolonged standing, bending, kneeling, climbing stairs, and carrying objects weighing in excess of seven pounds. In addition, she stated that when she is experiencing a migraine[,] she does not dress, bathe, care for her hair or feed herself. (Exhibit 4E, 5E, 8E). However, the claimant acknowledged that she is still capable of preparing meals, performing household chores, walking for up to one quarter of a mile, operating a motor vehicle, shopping for necessities, handling daily finances, reading, watching movies, socializing with others, following both written and spoken instructions, getting along with authority figures, handling stressful situations, and dealing with

> changes in her routine (Exhibits 4E and 5E).
>
> Scott Lay, the claimant's former co-worker, wrote a letter on the claimant's behalf. He reported working with the claimant from 2006 to 2010, during which time he alleged that the claimant's headaches became more frequent. Due to her symptoms and medication, he affirmed that over time the claimant needed to take off more time from work. (Exhibit 23E[.])
>
> At the hearing, the claimant testified that she previously worked as an aircraft engine parts inspector. . . . If she were in one position too long, she would have stress on her back and neck, which would cause headaches. Jet fumes triggered migraine headaches. When using a computer for 20-30 minutes, she would have stress in her shoulders that triggered a headache. Some days she could only work for 20 minutes, other days, she could work all day. When she had headaches at home, she took medication. The medications would make her sleepy and she could not drive. She could not have worked safely after taking medication. . . . If she took the medications while working, she would not have been able to enter the data accurately. Now, if she is in front of a computer screen for more than 10-15 minutes, she gets a headache. She would have to get up and walk around and go lie down. She needs to sleep after she takes her narcotic medications. Some weeks she has migraines 4-5 times a week, other weeks, she has migraines daily. She averages 4-5 migraines a weeks [sic]. She will sleep for about 3 hours, which does help. When she awakes, she is exhausted, but the headaches is [sic] gone. Occasionally, the headache is still there. Side effects of her medication include drowsiness and dizziness. She sees a mental health professional once a month. It helps with her quality of life. It has helped her manage the chronic pain.

(Tr. 19-20.)

With respect to Plaintiff's credibility, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but her statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible for the reasons explained in

7

the decision. (Tr. 20.) The ALJ continued:

> Since [the claimant] became unemployed, she alleged being able to manage her headaches with medication and rest . . . .
>
> Additionally, in April, records document that the claimant had a recent family member pass away, for which she travel [sic] to the funeral. In addition, the claimant acknowledged going on a recent vacation with her partner, which I note that traveling to a funeral and going on a vacation seem inconsistent with the claimant's alleged limitations. . . . The claimant also admitted being able to control her headaches if she takes her medication, Zomig, at the first sign of them, and that chiropractic treatment was helpful. . . .
>
> When seen at the VA in February 2015[,] the claimant was noted to have a 6-year history of cervicogenic, muscle tension headaches with vascular qualities. She had not benefited [sic] from injections, except a possible decrease in neck pain that lasted for two days. . . . When seen in follow-up [in] March 2015, the claimant continued to complain of headaches. She requested to be referred to a pain clinic. . . .
>
> When seen at the Behavioral Health Clinic in March 2015, the claimant indicated that she had been doing well since her last appointment. However, she described feeling that she and her medical providers had exhausted all attempts to improve her headaches. . . .
>
> When seen in September 2015, the claimant was assessed with chronic neck pain with headaches . . . . In September 2015, the claimant reported she had been doing well since her last appointment. She described having more headaches recently, which interrupted most of her day. She indicated that on days when she has headaches[,] she attempts to maintain a euthymic [sic] mod [sic] to decrease tension.

(Tr. 20-22.)

The ALJ found Plaintiff's allegations of disabling pain and limitations "not fully credible." (Tr. 22.) The ALJ explained:

8

> The evidence indicates that the claimant has continued complaints of head and neck pain, but she otherwise can move about and perform gainful work activity on a sustained basis. The evidence shows that the claimant has continually sought narcotic pain medication, but her physicians have discouraged this and offered alternative treatments for her pain complaints. She, however, has not required surgical treatment and her treatment has continued to be conservative. The only surgical treatment the claimant has required since her alleged onset date was for stones. I further notes [sic] that the claimant has not required extended inpatient hospitalization for a physical problem. There is no indication that the claimant has any medication side effects that would affect her ability to work. . . . The evidence does not indicate headaches of the frequency or severity that would preclude the claimant from working. . . .
>
> I note that although the claimant has received treatment for the allegedly disabling impairments, her treatment has been essentially routine and conservative in nature. The lack of any aggressive treatment suggests the claimant's symptoms and limitations were not as severe as she alleged. Due to this, the credibility of the claimant's allegations regarding the severity of her symptoms and limitations is diminished because those allegations are greater than expected in light of the objective evidence of record. However, I also note that the claimant's work history prior to her alleged onset date shows a pattern of consistent earnings (Exhibit 4D). I find that the claimant's earnings record bolsters her credibility and it shows a good work history.

(Tr. 22-23.)

The Court agrees with Plaintiff that the ALJ's credibility determination is not supported by substantial evidence. The ALJ states that the evidence does not indicate headaches of the frequency or severity that would preclude Plaintiff from working. However, the record indicates that Plaintiff has tension headaches or migraines four or five times a week, sometimes daily, which last three hours on average, but can go on for days. (*See, e.g.*, Tr. 46-47, 85-86, 397, 452, 1393.)

9

Despite trying various treatment options, including pain management in the form of medications such as Tizanidine, Hydrocodone, Zolmitriptan, Propranolol, and Nortriptyline, to name just a few, physical therapy, TENS machine, ice and moist heat, nerve blocks and nerve burning, chiropractic treatment,[5] acupuncture, and botulinum toxin ("Botox") injections[6] (Tr. 54, 94, 397, 399, 414-15, 442-43, 447-48, 1860, 2013, 2016, 2022, 2081, 2143),[7] Plaintiff's headaches were still not

---

[5] The ALJ noted that chiropractic treatment was helpful, but the record indicates that it did not help with Plaintiff's headaches. (Tr. 94, 443, 544 (indicating poor response to chiropractic care as well as pain management and physical therapy), 1369 (same).)

[6] Plaintiff was also willing to try deep tissue massage, but the VA would not approve it. (Tr. 443; *see also* Tr. 2029.)

[7] While the ALJ considers Plaintiff's treatment to be essentially routine and conservative, it is unclear what other treatment options, if any, existed for Plaintiff's condition, especially when the record seems to indicate that all treatment options have been exhausted. (*See, e.g.*, Tr. 1768 ("Unfortunately I do not know that I have more to offer this patient at this time."), 2081 ("I explained that I suspect that she will not improve with any future injections given the lack of any response with her initial injections [sic]."); *see also* Tr. 54 ("I've never declined anything, even if I didn't think it would work, like botox[.]"), 442-43, 447.) Further, although the ALJ points out that Plaintiff has not required surgical treatment and/or extended inpatient hospitalization, there is no indication that such treatment was either recommended or available for Plaintiff's condition. (*See* Tr. 55 (stating that there have not been any surgical recommendations with regard to Plaintiff's neck).) Plaintiff's medical providers were trying to manage her symptoms (*see* Tr. 76 ("I have severe arthritis in my cervical spine, that causes pain and tension. The tension causes migraine headaches. So, ultimately what we try to do is control the tension.")), albeit not quite successfully, by, *inter alia*, prescribing narcotic pain medication, except when it was contraindicated by Plaintiff's elevated liver enzymes. (*See* Tr. 1566 ("She continues to be off a number of her previous medications for pain and headaches due to elevated liver enzymes."), 1573 ("Having a problem with her liver (tested positive for hepatitis A) so all medications that could impact her liver were stopped so Tizanadine was stopped and her headaches increased . . . ."), 1868 ("She is hopeful that Botox will be helpful as she has not been able to return to her previous pain regimen due to her liver enzymes."), 1877 (same),

(continued...)

well controlled and even when they were alleviated with medications, the side effects of such medications were significant. (*See, e.g.*, Tr. 45 ("Zomig's a very fast acting [sic] and sometimes you take it, 30 minutes later the headache just starts dissipating away. About 75 or 70% of the time it doesn't work and I have to go to the next step, which is going to be narcotics. . . . [Then,] I got to lay down and sleep. . . . Sometimes that doesn't work, sometimes I sleep, I wake up, I still have a headache."); Tr. 46, 49-50, 80, 104-05, 443, 452, 1571, & 1573 (stating that the side effects of Plaintiff's medications included drowsiness, dizziness, not being clear-headed or focused, sleepiness, low blood pressure, euphoria, and hallucinations); Tr. 543 (stating that Plaintiff "cannot alway[s] take Zomig because of work or commuting"); Tr. 1877 ("[Patient] reported feeling worse physically and struggling to engage in any activity. She reported that she spends much of her day laying down and/or sleeping on the days when the pain is worse. . . . [She is] unable to take medications due to liver enzymes, and waiting for her trial of Botox."); Tr. 2005, 2007; *but see* Tr. 1112 ("[Patient] has begun a schedule that she is comfortable with and . . . is better able to manage her headaches without as many medications."); Tr. 1113 ("She endorsed continued daily headaches.

---

7(...continued)
1892 (same); *see also* Tr. 1268 ("Multiple lesions in the liver fulfill the criteria for hemangioma except for an indeterminate lesion in the left lobe anteriorly. MRI of the liver with Eovist is recommended for further evaluation.").) Therefore, in light of this record, the ALJ's statement that Plaintiff's physicians have discouraged her from seeking narcotic pain medication appears misleading.

11

[Patient] is able to treat them with a wider variety of medications as she can stay home, lay down, and sleep if needed. She feels better able to quickly improve them than previously. She continues to feel muscle tension.").)

The record indicates that Plaintiff's cervicogenic, muscle tension headaches with vascular qualities[8] were initially responsive to Zomig, which later stopped working, and many other medications and treatments were ineffective and/or had significant side effects. (*See, e.g.*, Tr. 442-43, 449-50, 452 ("Zomig helps sometimes and sometimes not (50/50)."), 1255.) When Plaintiff reported slight improvement in her headaches in terms of duration and her pain medication was subsequently decreased, she began experiencing significantly more (and lengthy) headaches. (Tr. 451, 1392.)

The ALJ also suggests that despite her complaints, Plaintiff can still "move about and perform gainful work activity."[9] (Tr. 22.) While Plaintiff does not

---

[8] An MRI of Plaintiff's cervical spine, performed on March 26, 2015, showed multiple degenerative changes, including, *inter alia*, moderate foraminal narrowing bilaterally at C3-4, moderate foraminal narrowing on the left at C4-5, diffuse posterior disc osteophyte formation at C5-6, and prominent posterior disc osteophyte complex at C6-7. (Tr. 1751.) Earlier X-rays showed mild to moderate degenerative disc disease and osteoarthritis of the lower cervical spine. (Tr. 1483.)

[9] The ALJ noted that Plaintiff went to a funeral and on vacation, which he deemed inconsistent with her alleged limitations. Although the record indicates that Plaintiff took some brief trips (*see* Tr. 1383, 1566), she avoided certain activities and "continue[d] to fear engaging in events due to the worry of a headache interrupting." (Tr. 1490, 1860 ("[Patient] does appear to have given up on a number of activities that previously were very enjoyable for fear of experiencing pain and ruining the experience."), 1868 ("In particular, she was disappointed that a recent trip was significantly negatively affected by her headaches. Since she returned from that trip her
(continued...)

12

suggest that she is either bed ridden or severely restricted in her movement, the record nevertheless shows that once a migraine or a headache strikes, her activities are drastically restricted either from the intensity of her symptoms or the side effects of her medications. (*See, e.g.*, Tr. 43 (stating that "all the medications that [Plaintiff] took that had an effect would make [her] sleepy, drowsy, so [she] didn't want to drive on it"); ; Tr. 103 ("[I]f I go somewhere, and a migraine comes on, I'm stuck. . . . I have driven, it's not safe, I shouldn't have done it. . . . The VA has a contract that you have to sign and it stipulates that you won't drive while you're taking it and if you do or get caught doing it, they'll take your pain medication away[.]"); Tr. 934 (stating that Plaintiff was cautioned not to drive while taking Hydrocodone); Tr. 1128 ("She described continued exacerbation of her pain, numerous headaches, and overall continued frustration. [Patient] stated that she has been frustrated with her limitations and feeling as though she is unable to participate in many activities.").)

Plaintiff's continuous attempts to manage her headaches are evident from

---

[9](...continued)
mood is has been [sic] more down as she considers her long time struggles with pain management and fears that she will never be able to travel and enjoy activities."), 2043 ("She is still hesitant to schedule any trips or activities as she does not want to be disappointed."), 2111 (stating that Plaintiff "still restricts what plans she makes out of fear of headaches"); *see also* Tr. 1494 ("[Patient] has found a number of ways to attempt to cope with the headaches but many times they continue to interfere with her ability to complete tasks as planned."); Tr. 1520 ("[Patient] withdrew from her classes this semester due to struggling with pain and stressors and not being able to complete coursework.").) Even with her classes, she did "not plan to utilize a schedule but rather work based on her pain level." (Tr. 1490.)

her numerous medical appointments during the relevant period and beyond. (*See, e.g.*, Tr. 1076 ("Will set long return date given problems with absences from work [due to] medical [appointments] . . . ."); Tr. 1146 (stating that Plaintiff "is 'hanging on by her nails to maintain employment,' . . . she is missing work beyond the days payable through sick leave and is having to take unpaid leave"); Tr. 1258 ("[Patient] continues to attempt to cope with her headaches and be productive.").)

Based on the foregoing, the Court finds that the ALJ's reasons for rejecting Plaintiff's subjective complaints regarding her migraine headaches and neck pain were not supported by substantial evidence. Therefore, the Commissioner's decision is due to be reversed and remanded for further consideration of these complaints and for any further proceedings deemed appropriate.

Accordingly, it is **ORDERED**:

1. The Commissioner's decision is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Order.

2. The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions, and close the file.

3. In the event that benefits are awarded on remand, any § 406(b) or § 1383(d)(2) fee application shall be filed within the parameters set forth by the Order entered in *In re: Procedures for Applying for Attorney's Fees Under 42*

*U.S.C. §§ 406(b) & 1383(d)(2)*, Case No.: 6:12-mc-124-Orl-22 (M.D. Fla. Nov. 13, 2012). This Order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412.

**DONE AND ORDERED** at Jacksonville, Florida, on March 6, 2018.

　　　　　　　　　　　　　　　　　　　MONTE C. RICHARDSON
　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record